Case number 319-0266, Derek Deakin Sr., independent administrator of the estate of Deborah Deakin, deceased, appellant, versus Daniel Clark, M.D. Mr. Paris, are you ready? Good morning, your honors. Good morning, your honor. Good morning. Good morning. Mr. Paris, please proceed when you're ready. Thank you, your honor. May it please the court, Tom Paris on behalf of the appellant to Deborah Deakin Estate. Now, withstanding the fact that the Homer Glenn Fire Department record indicates that Debbie Deakin filled a prescription for Flexerol at noon that day, for 21 Flexerol, the record is, in my view, completely clear. That did not happen. And that record is the basis of what I've been fighting all along, from Motion and Limiting Number 3 to the date forward. The truth about that Flexerol is that on that day, the CVS records are absolutely completely clear that 40 Vicoprofen, which were prescribed by Dr. Clark, were filled, not 21 Flexerol. This Flexerol bottle that came into evidence is not Debbie Deakin's Flexerol. It's Dave Deakin's Flexerol. When that bottle was filled, yes, it had 21 pills at some time in the past. It was two days, wasn't it? Not that empty bottle, no. The almost full bottle that only had one pill out, that was excluded from evidence based on they say there was no foundation for that full bottle of Flexerol to come in, but they bring in the empty bottle. So there is a full bottle and it's actually at tab 12 of my separate appendix. But so that's Dave Deakin's bottle and he explained that. Now, this Flexerol bottle, which is the subject of the Homer Glenn Fire Department report, it's not anywhere near Debbie. She's on the back deck with her husband at the time she dies. This bottle is in the bedroom on her side by a nightstand because according to Dave, she's called it in two days earlier, which frankly you can see from the picture is true. The paramedic who prepared that report never spoke with Dave Deakin. So we have an accurate record of what was filled that day by the CVS. Then we have this frantic statement and frantic circumstances that lead to the admission of the 21 Flexerol, which from the beginning I tried to keep out. And so it's a Rule 403 relevance expert evidence issue. I have conceded that there is some, what I've said, microscopically thin relevance to it, but it is under 403, that evidence should be excluded if its probative value is substantially outweighed. And I'll go on, but first I want you to think about probative value here. And this is entirely, entirely a causation argument. Is it contributory negligence that the defense is getting at? Is it intentional actions by Debbie Deakin? I've tried to force that issue over and over again. And I have yet to get them to say, because if it is some contributory negligence, she mistakenly took 21 pills that day. Well, it's their burden of proof to prove it. And we never got to that point. If it is intentional that on her son's 16th pills, well, that's a pretty good intervening cause I would suggest to you. But so is its probative value substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury? I submit to you, it is all three. It's not one, it is all three. As to unfair prejudice, alcohol, as this court, and I think every other district in the state has said, is highly prejudicial. So now I ask you, is this drug during an opioid epidemic highly prejudicial? If not, it's prejudicial. I mean, how could it not be? You could see how much they came back over and over and over to the opioid issue, which is just, flexural is not an opioid. But frankly, few would know that after reading through these transcripts, unless you're trying to look at what I was saying, which then goes to the issue of confusion. This evidence was laden with confusion. In fact, the defense closing argument is confusing itself. And I'll get to that in a minute. But is it? Mr. Parrish, let me interrupt you a minute. You indicated there was no evidence that the decedent consumed these flexural. Well, there was an autopsy ordered by the family, is that correct? There was, yes. And yet no toxicology studies were done. Uh, that is unfortunate, but it is definitely a true fact in this case that- And then the body was cremated. That is correct. So how is the defendant going to prove what the decedent consumed before her death? I would submit to you that they don't need to. And their argument at trial and in their appeal demonstrates that. Dr. Shane was their cardiologist. He says there's no sufficient occlusion in any of her main coronary arteries to cause a heart attack. And so she did not have, as my expert and my theory of the case was, that she had a myocardial infarction. At page 39 of the appellee's brief, they say, Dr. Shane explained that Ms. Deacon's cardiac arrhythmia, and that's their theory, that there's this aberrant arrhythmia that comes up because of the flexural. The arrhythmia could have been caused by a combination of several different factors, including an enlarged heart and the related stress that placed on its function, her years of smoking, which can cause muscle spasm, the fact that she was smoking at the time of her death, which could have caused her oxygen levels to drop, her undisputed use of Vicaprofen that day, which can cause depression of breathing and then possibly flexural. So they have plenty of defense. And they could come into trial and say, ladies and gentlemen, plaintiff says that she had a myocardial infarction. The autopsy on her heart says this. Here's three different pathologists who talk about that. But no, that's not the case. She had a sudden arrhythmia and that's what caused her death because the evidence isn't sufficient to show that she had. And so they have plenty of defense. It's this flexural that is so prejudicial that throws off this case and becomes the subject of nearly, if not every witness's testimony. So do they need a toxicology report? They admit that they don't. Their doctors, their experts say they don't. So as concerns the element of confusion, is it one? Is it 21? Is it 40? When were they taken? Were they taken at any relevant time? That is somewhere within a minute, an hour, two hours, some period of time. Were they taken that morning when she left her bedroom where the bottle was? And if so, why did it not show up till five o'clock until she has a heart attack? They have no explanation for that. It's confusing as to when and how many and why she took these. When, and I mean why, that goes back to the causation argument. Let me ask you again though, isn't it confusing because a toxicology study could have quantified how much of any of these drugs were in her system at the time of her death? Well, that's, I don't think that's confusing, but it would have been useful for everyone to have that. I do admit that. However, we can, and as I tried to do in this case, that completely backfired on me, use some sort of scientific analysis. We do it with alcohol all the time. We have, or we don't, we have some report of, all right, the guy had 10 beers during this period of time at the bar or so many glasses of whiskey. And then we have a pharmacologist or somebody who says, based upon that and based upon the metabolism of the human system, at this point when the crash happened, he would have been legally intoxicated, impaired, whatever phrase they want to go with. That could have happened here if they wanted to have a definitive statement. She took 21 pills that morning when she was in the bedroom where the empty bottle was. Well, okay. Well, how, let me ask you this. How would they know how many pills she took at what time they weren't there? Well, I suggest to you that that's their burden since they're the ones who are pushing that, that if it is some negligent use of Clexerol by her because she wasn't supposed to be taking them or she decided her chest pain was really intense. And so rather than take one, she would take two or five or 21. Or if she was as the word overdose generally means that someone is intentionally overdosing on a drug when knowingly taking a dose well over the dose. Again, if that's the theory, which they were never forced to say the ghost approximate cause and burden of proof, that's the big point. It goes to burden of proof. It's their burden. So if that was their theory, yes, it's their burden to do that. Not for me to undo every speculative speculative theory. Third rule 403 talks about misleading the jury. Will it mislead the jury? And I submit to you that yes, it absolutely misleads the jury. And frankly, if you were to look at the closing arguments of the defense, which I highlighted some of it on page 28 of my it's replete with confusion. And I'm going to quote here for just a minute. Council states, and it's in quotations in multiple places where it says she had a bottle of cyclobenzaprine filled at noon. Okay. A bottle of cyclobenzaprine, which is flexible, of course, filled it knew that we know there's no bottle of cyclobenzaprine filled on that day for her. That's what he says. And over and I go, that comes up. We don't know whose cyclobenzaprine were taken. We don't know. But it said 21 pills. So 21 pills of someone's cyclobenzaprine were filled that day. It's an empty bottle. We don't know how many were taken. We don't have a toxicology. We don't know how many were taken. So what could be more confusing? There's an admission of the confusion that's going on there. So it's highly prejudicial. It's confusing, and it completely misleads the jury. And it most importantly, it does not leave the defense without a way to defend this case. They have, as I've noted to you, a theory that this was a sudden arrhythmia. Lots of people who die of sudden arrhythmia don't have an autopsy don't have toxicology reports. They have experts. What I'm focusing on is this flex wall, which should not have come in to evidence because frankly, it didn't happen. She filled Vicaprofen that day prescribed by her doctor. And the record is entirely, completely clear. I mean, if there were 21 bottles of empty beer in a trunk at the time of a crash, we wouldn't let that into evidence. We don't know if it was the driver, his kid last week, or when those 21 bottles. And that's the same as this flex wall. There's no way that this would not be prejudicial to come in. Rule 703 is the other aspect of this, and that it has to be the type of evidence reasonably relied upon by different than the decisions of an emergency room doctor who has greater capacities, different than a deputy coroner who's investigating whether an autopsy should take place and different still yet from a trial judge or this panel. There's much more time to contemplate what's going on and take a higher level view than a paramedic. A paramedic has a dead woman in front of them. They have to get her and get her to the emergency room. And so they appropriately ask, what did she take? A frantic husband who watched his wife die runs in to find a bottle because he knew that she had taken some medications that were prescribed that day. So is this the kind of thing that's reasonably relied upon? No. In fact, it is untrue. Experts don't rely upon untrue statements, and it is untrue that this was taken. I did not put in my brief the case of family dental that your honors put out, but I think it is excellent decision in the second half of it deals with some of these issues where the record says arthritis that the decedent tab, and the decedent herself said that. But your honors are clear that that's not enough. Nobody ever diagnosed her with that. Just because Dave Deacon brings out a bottle, and by the way, who is making the statement? Is Dave Deacon making the statement? She took 21 pills, or is the bottle making a statement that says, I once had 21, and I now have zero in here. So she consumed those. So, but in your opinion in YAMLO, you talk about, well, I'll leave it at that as I see my time is up. Thank you. Thank you, Mr. Gibbs. Good morning, your honors. May I please Catherine Weiler on behalf of Dr. Daniel Clark in this appeal. The jury after weeks of testimony about complicated medical issues, not just the question of flexor, complicated medical issues, particularly related to the cause of death in this case, rendered its verdict for Dr. Clark. That verdict should stand. There has been no improper exercise of discretion in this case. The trial court properly denied the plaintiff's motion in limit A3, allowed the jury to consider this relevant probative evidence, and the jury rendered its verdict after hearing all of the plaintiff's testimony that largely restates what plaintiff's counsel just explained now. The jury heard that. The jury had the opportunity to consider those explanations. The jury weighed the credibility of the witnesses, and the jury found in favor of Dr. Clark. That decision should failed to diagnose acute coronary syndrome in his office on May 6th of 2013 and call 911. That was the only issue. There are other issues out there about flexoral. There are issues pending out there about contributory negligence. The only question the jury was asked to decide was whether Dr. Clark, I'm going to say it again, failed to diagnose acute coronary syndrome in his office. And now on appeal, once again, there is only one issue that has been raised, whether the circuit court abused its discretion when it denied Mr. Deacon's motion in limit A3. That's important, too, particularly in light of plaintiff's counsel's argument just now about Rule 703 and improper reliance by experts. There was some discussion about closing argument, perhaps the implication that closing argument was improper. None of those have been argued here. This court is asked to consider one thing today, and that is the issue raised on appeal, whether the circuit court abused its discretion when it denied Mr. Deacon's motion in limit A3. There was no abuse of discretion. We know already, because plaintiff's counsel has conceded it, that evidence related to flexoral, which went to causation, it was directly relevant to the question of what caused this woman's passing, it was relevant under Rule 401. There's no question about that. It's been conceded. The only issue that's been argued to this court today is whether that information was sufficient, whether under Illinois Rule of Evidence 403, that evidence's probative value was substantially outweighed by the danger of unfair prejudice. And in this case, no. The flexoral evidence we've been discussing was relevant to the possible cause death in this case. And Justice Schmidt, as you've been saying, there's no toxicology report in this case, which means there is no definitive answer about what exactly was the cause of death here. It was certainly disputed, as I've said probably ad nauseum. The issue at trial was whether Dr. Clark failed to diagnose acute coronary syndrome. The defense in this case was there was acute coronary syndrome. Multiple experts testified to that. There was no acute coronary syndrome. It did not present at the time of Ms. Deacon's evaluation in Dr. Clark's office. And it wasn't an issue that caused her death. She died as a result of a cardiac arrhythmia, which could not have been anticipated and could not have been prevented. As Plaintiff's Counsel pointed out, and he's exactly right, we describe at the end of our brief, there are multiple potential explanations for what may have caused that cardiac arrhythmia to occur. And this is what all of the experts discussed with the jury at trial. It could have been any combination of several different factors. It could have been Ms. Deacon's age, her weight, her enlarged heart, related stress that was placed on the heart. It could have been related to smoking, which could cause the muscle to spasm. It could have been related to medications that Ms. Deacon was taking on the day of her death. Which medications were those? Which medications was she taking? That is the only dispute here before this court. That is the only issue that Plaintiff's Counsel raises. And that is a question which cannot be resolved definitively. Plaintiff certainly denies that Ms. Deacon was taking Flexeril on the day of her death. At the time, he informs the paramedics that she had taken Flexeril. And that's part of what the paramedics treated her for, which is why it's relevant and important. It's in the medical records. This is not speculation raised by defense experts later during trial with no evidence in the record. This is what the paramedics were told at the time and what they were treating Ms. Deacon for when they were trying to save her life and trying to understand what caused her heart to stop. That's why that information is in the medical records. That's why the experts relied on that information as one of many possible explanations for what happened in this case. And that's why the jury had to consider that information in evaluating causation here. Again, this is not about contributory negligence. It's about causation. It's the plaintiff's burden to establish causation. Because the plaintiff disagrees with one of the potential causes of death does not make it irrelevant, does not make it unfairly prejudicial, does not make it inadmissible at trial. And that is the argument Plaintiff's Counsel is making now. I disagreed with this evidence. We don't think this evidence is accurate. Therefore, it should be inadmissible. No. The plaintiff has the opportunity to explain to the jury those theories. To explain to the jury, we don't think this evidence is correct. My statements as Ms. Deacon's husband to the paramedics were inaccurate. In the heat of the moment, it was confusing. It was frantic. I was all of that. The jury considered all of that. And the jury reached a different conclusion in this case. All of the evidence that was submitted was properly submitted. The trial court properly determined that this evidence was relevant and admissible. It is entirely consistent with decisions from the various districts of the appellate court, which find that in situations involving, for example, smoking or alcohol use, if that is directly relevant and pertinent to the claims, then that evidence is admissible. If that evidence is not relevant, if it has nothing to do with the claims at issue and is really only being brought in because it's extraneous information that may impact on the jury's understanding or interpretation of the events or how the jury looks at the plaintiff, then it is inadmissible. That's not this case. Because of that, the trial court acted properly here. The jury's verdict should stand and the trial court should be affirmed. If the panel has no further questions, I'll see the rest of my time. Why was the second bottle of Flexerol not relevant? Your Honor, that's not an issue, frankly, in this appeal. That wasn't raised by the defendant. I'm sure the court should have denied the defendant's Motion to Eliminate No. 10 and should have allowed Motion to Eliminate No. 3. It's just not been argued. I can explain to the court my interpretation of that, but because it hasn't been briefed and hasn't been argued before this court, I don't think that the court can evaluate it. Okay. All right, then. Thank you, Ms. Reiner. Mr. Perkins. Thank you. Reading from your decision in Yanlow v. Park Family Dentistry, where I was talking about, you specifically say Yanlow did not have rheumatoid arthritis, which was part of the defense and was not being treated for that condition, although her doctor had been told, Dr. Rowe had testified that Yanlow once told him that. So here we have even further removed. We have either a bottle of Flexerol or Dave Deacon, one or the other, making a statement that she took these that day. But that's not the case. She took the 40. She took Vicoprofen that day. And so I would encourage you when you're considering this to really look at the second half of that Yanlow decision. The experts in this case were all required to discuss this issue because it was front and center and avoiding it was not going to get any different result, frankly. And so the fact that Dave Deacon originally declined an autopsy and the coroner's office themselves found no reason to do an autopsy. And then later in talking to Debbie's boss, decided to go ahead with an autopsy is not dispositive of anything because frankly, many people don't have an autopsy. I wish that there were a toxicology study done with that, but it's not. And again, it doesn't leave the defense without an explanation under their theory that she had a sudden arrhythmia event. But, and I want to be clear that I did not suggest or argue, and I am not stating now that defense counsel in making his argument about who knows whose, you know, Flexerol she took, suggesting of course, that it's Dave's or somebody else, or she's taking drugs that nobody, that Dave himself doesn't know about. Those were the rules that were set at the beginning of this case rules that I fought against, but there was nothing untoward about that. He's a zealot advocate making arguments that were permissible as the rules were set out. Could there be anything more prejudicial, more inflammatory, more confusing than overdosing on drugs? I can imagine some things that would tick off a jury more putting into evidence, things like an abortion or other stuff. If we're going to, I mean, I don't actually think this is beyond, this is a point of dispute. This court and every other in the state of Illinois have talked about how alcohol is highly prejudicial. What family wants to admit that their loved one is strung out on drugs that would just say that at the funeral or elsewhere? It doesn't happen because it is prejudicial here. It's misleading. Well, let me ask you a question. You made the comment several times that it wasn't true that the decedent took Flexerol that day, correct? I strongly believe that, yes. Well, but your client told the paramedics she did. No, he didn't. And then at trial said, no, he didn't. And so isn't that a jury question as to what to believe? I don't believe so. First of all, he was asked, did she take something that day? He ran looking for a bottle and brings out the bottle and gives it to someone who's not even testified in this case. So is that a statement by him? I'll accept that it's a statement. Is that a statement that she took Flexerol, 21 Flexerol that day or when she took them? No, it's not. And it's flat out wrong. He knew that she had taken something that day and he was looking for the bottle. And he explained that. But explaining that those 21 beer bottles in the car were not drinking. We're not talking about beer bottles here. We're talking about a guy who's got no motive to lie to save his wife's life when the paramedics show up. And that is, and he hands him a bottle of Flexerol. And then he testifies differently at trial. So the jury weighs the credibility of those two statements and they make a decision. It's not for the appellate court to decide which of those statements is true, is it? He didn't testify to that in his deposition. He testified and explained the situation. And in fact, during the examination by defense counsel, his experts, he wouldn't talk about any of the at trial. He said, didn't Dave Deacon say this on page 54, you know, trying to, in a, those statements, which were less than clear, but he talks about bringing out his bottle, a bottle that was kept out of evidence in this case. So he did not make statements that she took those pills that day, one at eight, 10 noon, anytime. And he certainly didn't say that she took 21 pills, which is the inference, the very prejudicial inference. Thank you. All right. I want to thank you both for your argument today. You're going to take this matter under advisement to pass you with a written decision within a short time.